UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMES GENDEMEH,                        )
                                       )
         Plaintiff,                    )         Civil Action No. 3:21-CV-617-CHB
                                       )
v.                                     )
                                       )
BROWN-FORMAN CORPORATION,              )         **MEMORANDUM OPINION**
                                       )              **AND ORDER**
         Defendant.                    )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Brown-Forman Corporation's Motion for

Summary Judgment. [R. 26]. Plaintiff James Gendemeh has responded [R. 30], and Brown-

Forman replied [R. 35]. For the reasons that follow, the Court will grant Brown-Forman's Motion

for Summary Judgment as to all remaining claims.

## I.   BACKGROUND

Plaintiff James Gendemeh, who was born in Sierra Leone, worked for Defendant Brown-

Forman Corporation in various capacities from December of 2012 until his termination on October

8, 2019. [R. 1 (Complaint), ¶ 11]; [R. 30, pp. 1, 2]. Throughout his employment with Brown-

Forman, Gendemeh was a member of the United Automobile, Aerospace & Agricultural

Implement Workers of America, UAW Local 2309 (hereinafter, "the Union"). [R. 26-2 (Excerpts

from Deposition of Plaintiff Gendemeh), pp. 40–41].[1] At the outset of his employment, Gendemeh

participated in an orientation on Brown-Forman's employment policies and practices, including

the company's attendance policy and how to apply for Family and Medical Leave Act ("FMLA")

and/or short-term disability leave. *Id.* at 47, 57; *see also* [R. 26-3 (Exhibits 5, 6 to Gendemeh's

---

[1] For clarity, the Court has throughout this Order cited to the deposition page numbers, rather than the CM-ECF
PageID numbers, when referencing the excerpted portions of Plaintiff Gendemeh's deposition.

Deposition), pp. 1–14, 15]. Brown-Forman also provided annual FMLA and short-term disability leave training in October of each year. [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 47–53]; [R. 26-3 (Exhibit 7 to Gendemeh's Deposition), pp. 16–17].

Brown-Forman's attendance policy is particularly relevant here. The company utilizes a rolling twelve-month point system for employee attendance, and employees are allowed to accumulate six points in a three-month period before receiving any disciplinary action beyond oral and written warnings. [R. 1 (Complaint), ¶ 18]; [R. 26-3 (Exhibit 5 to Gendemeh's Deposition), p. 13]. If, however, an employee accumulates seven or more points during the rolling twelve-month period, that employee would be at risk of termination. [R. 26-3 (Exhibit 5 to Gendemeh's Deposition), p. 13]. In addition, if the employee receives three Final Written Warnings within the rolling twelve-month period, the employee would also be at risk of termination. *Id.*

In April of 2018, Gendemeh applied for FMLA leave to visit his sister who was suffering from cancer. [R. 26-2 (Deposition of Plaintiff James Gendemeh), pp. 49–50, 59–60]. His request was denied as not FMLA-qualifying. *Id.* Nevertheless, Brown-Forman worked with Gendemeh to allow him time off to be with his sister without penalty. *Id.*; *see also* [R. 26-3 (Exhibit 8 to Gendemeh's Deposition), pp. 18–19]. In July of 2018, Gendemeh again applied for FMLA leave due to knee pain, and this time his request was approved. [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 48–49, 62–67]; *see also* [R. 26-3 (Exhibit 12 to Gendemeh's Deposition), pp. 42–45]. Gendemeh claims his knee issues "substantially limited his ability to perform tasks such as running, lifting, kneeling, and standing and walking for long periods of time." [R. 1 (Complaint), ¶ 15]. As a result, Gendemeh took continuous leave from July 26, 2018 through July 27, 2018, intermittent leave between July 30, 2018 and August 20, 2018, and continuous leave

from August 21, 2018 through October 29, 2018. [R. 26-3 (Exhibit 12 to Gendemeh's Deposition), pp. 42–45].

On September 19, 2018, while on leave, Gendemeh had knee surgery. [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 101, 131]. On October 29, 2018, Gendemeh was informed by Brown-Forman via letter that as of that date, he had exhausted his available FMLA leave for the current period. *See* [R. 26-4, Ex. C (October 29, 2018 Letter to Gendemeh)]. Gendemeh would not begin to accrue additional FMLA leave until the anniversary of the first date he took leave (July 27, 2019), which the letter also stated. *Id.*; *see also* [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), p. 100]. Even so, Brown-Forman worked with Gendemeh to ensure he received short-term disability benefits through February 10, 2019, when Gendemeh's treating physician stated he could return to work with no exertional restrictions. [R. 26-2 (Deposition of Plaintiff James Gendemeh), pp. 67–68, 99, 105]; *see also* [R. 26-3 (Exhibits 12, 13 to Gendemeh's Deposition), pp 42–45, 46–50]. According to Gendemeh, he returned to work after his knee surgery "with no issues." [R. 1 (Complaint), ¶ 16]. At various points throughout the next year, however, Gendemeh's knee injury would "have flare ups" that caused him to miss work.[2] *Id.* at ¶ 17. After his return in February, Gendemeh admits he missed work six times "in late Summer of 2019" due to continuing knee issues. *Id.* at ¶ 19.

Sometime in September of 2019, Gendemeh's wife was hospitalized after an automobile accident. *Id.* at ¶ 20; [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 68–70]. Gendemeh's wife called Gendemeh's Human Resources Manager from the hospital and informed her of the accident, who then informed Gendemeh. [R. 1 (Complaint), ¶¶ 20–21]. The HR Manager

---

[2] Although many of Gendemeh's absences are documented through Brown-Forman's disciplinary actions, [R. 26-3 (Exhibits 10, 11, 12 to Gendemeh's Deposition), pp. 21–23, 24–41, 42–45], the Court observes that Gendemeh has not submitted any evidence (such as a doctor's note or treatment records) purporting to link these absences to his alleged "flare ups" with his knee.

advised Gendemeh that he could leave work to be with his wife. *Id.* at ¶ 21. When Gendemeh "expressed his concerns" about accumulating a seventh absence and being at risk of termination, the HR Manager assured him that the absence would not "count against [him]." *Id.* Gendemeh, consequently, left to be with his wife. *Id.* The next day, Gendemeh was incorrectly advised by a different HR officer that he had "pointed out," and he was written up for violating the attendance policy. *Id.* at ¶ 22; [R. 26-2 (Deposition of Plaintiff James Gendemeh), pp. 71–72]. Gendemeh disputed the write-up, and his HR Manager withdrew the seventh point. [R. 1 (Complaint), ¶ 22].

On October 7, 2019, Gendemeh alleges he suffered from a "disability flare up." *Id.* at ¶ 23. Gendemeh sought medical attention at the Little Clinic for his pain[3] and states he gave notice of the absence to Brown-Forman that morning and subsequently provided a doctor's note. *Id.* at ¶ 24. Gendemeh received ibuprofen and was advised to rest for the remainder of the day and return to work the following day. *Id.* at 115; [R. 26-3 (Exhibit 14 to Plaintiff's Deposition), p. 51]. Although he submitted a note from the Little Clinic documenting his visit the day prior, Gendemeh was terminated when he returned to work on October 8, 2019, having accumulated his seventh absence in a twelve-month period. [R. 1 (Complaint), ¶ 24]; [R. 26-3 (Exhibit 11 to Plaintiff's Deposition), p. 24].

Of note, within the last three years of Gendemeh's employment with Brown-Forman, he received numerous disciplinary actions, most of which were attendance related and all of which occurred either before he first sought FMLA leave for his knee or after he returned to work post-surgery in February of 2019. [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 78–87, 93–98, 105]. A summary of each disciplinary action follows.

---

[3] During his deposition, Gendemeh testified that he sought treatment for neck and back pain, and not knee pain, on this day. [R. 26-2 (Deposition of Plaintiff James Gendemeh), p. 114].

- On December 2, 2016, Gendemeh received an Oral Warning for the accumulation of attendance points during the period between March 31, 2016, and December 1, 2016.

- On February 21, 2017, Gendemeh was issued a Written Warning for the accumulation of attendance points during the period between March 31, 2016, and February 22, 2017.

- On May 15, 2017, Gendemeh was issued a Written Warning for the accumulation of attendance points during the period between June 3, 2016, and May 12, 2017.

- On July 17, 2017, Gendemeh received an Oral Warning for the accumulation of attendance points during the period between October 28, 2016, and July 14, 2017. At this time, three points had dropped off his attendance record between the May 15, 2017 disciplinary action and the July 17, 2017 disciplinary action by virtue of the rolling twelve-month measuring period. Therefore, lesser discipline was warranted.

- On July 20, 2017, Gendemeh was issued a Written Warning for the accumulation of attendance points during the period between October 28, 2016, and July 20, 2017.

- On November 22, 2017, Gendemeh was issued a Written Warning for the accumulation of attendance points during the period between November 29, 2016, and November 21, 2017.

- On January 17, 2018, Gendemeh was issued a Written Warning for the accumulation of attendance points during the period between February 22, 2017, and January 16, 2018.

- On March 5, 2018, Gendemeh was issued a Written Warning for the accumulation of attendance points during the period between May 12, 2017, and March 2, 2018.

- On March 27, 2018, Gendemeh was issued a Final Written Warning for the accumulation of attendance points during the period between May 12, 2017, and March 26, 2018.

- On May 29, 2018, Gendemeh was issued a Final Written Warning for the accumulation of attendance points during the period between July 14, 2017, and May 25, 2018.

- On June 22, 2018, Gendemeh was issued a Final Suspension for violations of the Brown-Forman Workplace Aggression Policy, by making threats to other

Company employees. At that time, Gendemeh signed a Last Chance Agreement on June 22, 2018, the terms of which required him to undergo behavioral treatments through the Brown-Forman Employee Assistance Program (EAP) for his threatening behavior.

▪ On February 14, 2019, Gendemeh received an Oral Warning for the accumulation of attendance points during the period March 2, 2018, through February 14, 2019.

▪ On February 20, 2019, Gendemeh was issued a Written Warning for the accumulation of attendance points during the period March 2, 2018, through February 21, 2019.

▪ On March 19, 2019, Gendemeh was issued a Written Warning for the accumulation of attendance points during the period between March 26, 2018, and March 18, 2019.

▪ On June 24, 2019, Gendemeh received an Oral Warning for the accumulation of attendance points during the period between February 15, 2019, and June 21, 2019.

▪ On July 15, 2019, Gendemeh was issued a Written Warning for the accumulation of attendance points during the period between February 15, 2019, and July 12, 2019.

▪ On July 24, 2019, Gendemeh was issued a Final Written Warning for the accumulation of attendance points during the period between February 15, 2019, and July 25, 2019.

[R. 26-1, pp. 6–7, 7–8]; *see also* [R. 26-3 (Exhibits 10, 11, 12 to Gendemeh's Deposition), pp. 21–23, 24–41, 42–45].

After Gendemeh's termination, on October 14, 2019, the Union filed a grievance on his behalf. [R. 26-3 (Exhibit 15 to Gendemeh's Deposition), pp. 52–56]. The grievance did not mention any belief that Gendemeh had been wrongfully denied FMLA leave, *see generally id.*, which Gendemeh attributes to the Union failing to consult him when drafting the grievance. [R. 26-2 (Deposition of Plaintiff James Gendemeh), p. 116]; [R. 30, pp. 1–2]. Rather, in the grievance, the Union acknowledged Gendemeh's absenteeism issues but requested that he be given another

chance. *See* [R. 26-3 (Exhibit 15 to Gendemeh's Deposition), pp. 52–56] ("James [Gendemeh] was terminated for attendance on 10/08/19. James missed work on 10/07/19 and, while the union known [sic] James was over on his occurrences, we ask that the Company give James another chance to continue his employment here at the cooperage."). Brown-Forman denied the grievance because of Gendemeh's "persistent violations of the Brown-Forman Attendance Policy." *Id.*; [R. 26-1, p. 9]. At that point, the Union withdrew the grievance and elected not to pursue arbitration. [R. 26-3 (Exhibit 15 to Gendemeh's Deposition), pp. 52–56].

Within six weeks of the Union's withdrawal, Gendemeh timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against Brown-Forman. [R. 26-3 (Exhibit 16 to Gendemeh's Deposition), p. 57]. In his Charge, Gendemeh alleged Brown-Forman discriminated against him based on his national origin in violation of Title VII of the Civil Rights Act of 1964. *Id.* Gendemeh's Charge was referred to the Louisville Metro Human Relations Commission, which could not substantiate Gendemeh's allegations and, consequently, dismissed the matter on June 30, 2020. [R. 26-1, p. 10].

On October 6, 2021, Gendemeh brought this action against Brown-Forman for violations of the Family Medical Leave Act (FMLA) and Kentucky Civil Rights Act (KCRA). *See generally* [R. 1]. Gendemeh alleges FMLA Interference (Count I), FMLA Retaliation (Count II), Disability Discrimination under the Kentucky Civil Rights Act (KCRA) (Count III), and National Origin Discrimination under the KCRA (Count IV). *Id.* On December 16, 2022, Brown-Forman moved for summary judgment on each of Gendemeh's claims. [R. 26]. Gendemeh responded in opposition with respect to his FMLA and KCRA national origin discrimination claims; however, "Gendemeh acknowledges that, in light of the Sixth Circuit's standard on summary judgment, discovery has generated insufficient evidence to prevail on his claims for disability discrimination" and he now

abandons that claim. [R. 30, p. 3 n.1]. The Court will therefore grant Brown-Forman's motion with respect to Gendemeh's KCRA disability discrimination claim (Count III) without further consideration and address Gendemeh's remaining claims in turn.

## II.   STANDARD OF REVIEW

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates,* 578 F.3d 407, 414 (6th Cir. 2009). The court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986). Where, as here, the defendant moves for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if

"there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party." *Id.* at 249. Ultimately, if the record, taken as a whole, could not lead the trier of fact to find

for the nonmoving party, then there is no genuine issue of material fact and summary judgment is

appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

## III.    ANALYSIS

As a preliminary matter, in his response to Brown-Forman's summary judgment motion,

Gendemeh outlines a series of "material facts in dispute," repeats certain facts as alleged by

Brown-Forman, then either "disputes" or "clarifies" them. *See* [R. 30, pp. 3–5]. For the most part,

however, his disputes and/or clarifications do not indicate a genuine issue of material fact. For

example, with respect to Brown-Forman's representation that it "provided annual training in

October of each year, in which the process for applying for FMLA leave and short-term disability

leave was reviewed with employees," and that during his deposition, Gendemeh "ultimately

acknowledged that he was familiar with the process of applying for FMLA . . . and that he received

annual training in which that process was reviewed," [R. 26-1, p. 4], Gendemeh explains that he

actually "testified that while the Company provided training yearly, it was multiple trainings at

once and he did not remember most of the things they trained on. Gendemeh remembered that if

he needed something, he should go to Human Resources." [R. 30, p. 3]. This "clarification" does

not refute Brown-Forman's claim that it provided annual FMLA and short-term disability training

or that Gendemeh recalled attending it.

Similarly, concerning Brown-Forman's statement that "[i]n between February 11, 2019,

and the end of his employment on October 8, 2019, Plaintiff received no additional medical

treatment related to his knee, nor was he placed under any work restrictions by his healthcare providers," [R. 26-1, p. 5], Gendemeh offers that he "continued experiencing pain in his knee following his knee surgery which continued through his date of termination." [R. 30, p. 3]. Again, the fact that Gendemeh continued to have pain in his knee does not contradict Brown-Forman's claim that he did not seek additional treatment related to that pain. Gendemeh seeks to further clarify this statement by adding, "Gendemeh testified that he did not remember receiving treatment related to his knee, not that he did not." *Id.* at 4. Again, because there is no evidence to suggest Gendemeh sought additional treatment, and because Gendemeh himself cannot recall receiving any treatment, this "clarification" is not inherently contradictory to Brown-Forman's claim that Gendemeh did not receive additional treatment for his knee during that period.

To the extent Gendemeh's other disputes and/or clarifications have any bearing on the Court's analysis, they will be addressed below.

**A. Family Medical Leave Act Claims (Counts I and II)**

Under the FMLA, an eligible employee is entitled to a total of twelve weeks of leave during a twelve-month period if the employee suffers from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Any employee who timely returns from such leave is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* at § 2614(a)(1)(A)–(B). However, the employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." *Id.* at § 2614(a)(3)(B).

In addition to these protections, the FMLA prohibits any employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or attempt to exercise, any right provided" by the FMLA. *Id.* at § 2615(a)(1). The Act further prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful" by the FMLA. *Id.* at § 2615(a)(2). These provisions are enforceable through § 107 of the FMLA, which imposes liability on an employer that violates these provisions and provides an individual right of action to the complaining employee. 29 U.S.C. § 2617(a)(1)–(2). Thus, "[t]his court recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 555–56 (6th Cir. 2006) (quoting *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004)) (internal quotation marks omitted).

In the present case, Gendemeh invokes both theories, and the Court addresses each in turn.

### i.    FMLA Interference (Count I)

Gendemeh's Complaint alleges Brown-Forman "unlawfully interfered with the exercise of [his] rights under the FMLA." [R. 1 (Complaint), ¶ 30]. Specifically, he claims Brown-Forman "interfered with his FMLA rights by not properly informing [him] that he was eligible for FMLA leave and for not providing FMLA leave for his absence on October 7, 2019." [R. 30, p. 2]. To prove such a claim, Gendemeh must demonstrate that (1) he was an eligible employee; (2) Brown-Forman was an employer as defined under the FMLA; (3) Gendemeh was entitled to leave under the FMLA; (4) he gave Brown-Forman notice of his intention to take leave; and (5) Brown-Forman denied him FMLA benefits to which he was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th

Cir. 2012); *Killian*, 454 F.3d at 556 (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).[4]

Under this interference theory, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (quoting *Arban v. West Pub. Co.*, 345 F.3d 390, 401 (6th Cir. 2003)) (internal quotation marks omitted). Thus, "[t]he employer's intent is not a relevant part of the [interference] inquiry." *Id.* at 507 (citing *Arban*, 345 F.3d at 401). Even so, "the FMLA is not a strict-liability statute." *Id.* (citations omitted). Under the interference theory, a claimant must demonstrate "that the employer's violation caused them harm." *Id.* at 508 (citation omitted).

In its motion for summary judgment, Brown-Forman notes, first, that Gendemeh has not pleaded facts sufficient to state a plausible claim for FMLA interference but submits, even if he

---

[4] Although neither party discusses the *McDonnell Douglas* burden-shifting framework with respect to Gendemeh's FMLA interference claim, some courts apply it in interference cases. However, as the Sixth Circuit recently recognized, "[t]here remains some confusion over when *McDonnell Douglas* applies to interference claims." *Render v. FCA US, LLC*, 53 F.4th 905, 919 (6th Cir. 2022), reh'g denied, No. 21-2851, 2022 WL 18431480 (6th Cir. Dec. 28, 2022). The Court of Appeals clarified that "*McDonnell Douglas* applies only when the employee relies on circumstantial evidence to make his case," such as "when an employee alleged that his employer interfered with his FMLA rights by terminating him because employers can terminate employees for many reasons—only some of which amount to FMLA interference." *Id.* (citing *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014)). Where, however, "an employee shows that his employer denied him FMLA benefits to which he was entitled, that is direct evidence of interference," and the Sixth Circuit determined *McDonnell Douglas* does not apply in such cases. *Id.* (citing *Travers v. Cellco P'ship*, 579 F. App'x 409, 414 (6th Cir. 2014)) ("To recover on an interference claim, [the employee] must establish that the employer denied the employee FMLA benefits to which she was entitled."); *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 424 (6th Cir. 2015) (describing denial of FMLA leave as "literal[] interfere[nce]") (add'l citations omitted). The basis of Gendemeh's interference claim is Brown-Forman's alleged failure to properly inform him of his rights under the FMLA and the company's failure to grant him FMLA leave for his absence on October 7, 2019. [R. 1 (Complaint), ¶ 30]; [R. 30, pp. 10–11]. These allegations, if proven, would constitute direct evidence of interference. *See Hurtt*, 627 F. App'x at 424. And although Gendemeh's FMLA *retaliation* claim is premised on his termination, Gendemeh has never alleged that Brown-Forman *interfered* with his FMLA rights by terminating him, which might have implicated *McDonnell Douglas*. *See Render*, 53 F.4th at 919; *Demyanovich*, 747 F.3d at 431. It would seem, then, that *McDonnel-Douglas* is inapplicable to Gendemeh's interference claim. In any case, Gendemeh's FMLA interference claim would still fail under the *McDonnell Douglas* burden-shifting framework for the same reasons his interference and retaliation claims fail as analyzed herein. *See supra* Section III(A)(i); *infra* Section III(A)(ii). He has failed to make a prima facie case, and even if he could, he has failed to demonstrate Brown-Forman's legitimate, non-discriminatory reasons for termination were pretextual.

had, his claim "fails as a matter of law based on the undisputed factual record." [R. 26-1, p. 11].

Specifically, Brown-Forman argues Gendemeh cannot show (1) "that he was entitled to leave

under the FMLA on the date that precipitated his termination;" (2) "that he gave any notice to

Brown-Forman of his intention to take leave on the seminal date;" or (3) "that he was improperly

denied benefits to which he was entitled." *Id.* at 12.[5] Gendemeh counters that "there is a genuine

issue of material fact as to whether or not Gendemeh was entitled to leave under the FMLA on

October 7, 2019 and whether he properly put the Defendant on notice of the need for leave,"

rendering summary judgment inappropriate. [R. 30, pp. 10–11]. In other words, Gendemeh argues

a reasonable jury could find that (1) his absence on October 7, 2019 was FMLA-qualifying, and

(2) he properly notified Brown-Forman of his need to take FMLA leave.

       "'[T]o invoke the protection of the FMLA, an employee must provide notice and a

qualifying reason for requesting the leave.'" *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir.

2014) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)) (add'l citation

omitted). The Court first finds there are no facts on which a reasonable jury could conclude that

Gendemeh's October 7, 2019 absence was FMLA-qualifying. As noted, the FMLA grants eligible

employees the right to take leave for a "serious health condition" that renders them unable to

perform their position. 29 U.S.C. § 2612(a)(1)(D). The regulations promulgated by the Secretary

of Labor provide that, "[f]or purposes of FMLA, serious health condition entitling an employee to

FMLA means an illness, injury, impairment or physical or mental condition that involves inpatient

care as defined in § 825.114 or continuing treatment by a healthcare provider as defined in §

825.115." 29 C.F.R. § 825.113(a). "Inpatient care means an overnight stay in a hospital, hospice,

or residential medical care facility, including any period of incapacity as defined in § 825.113(b),

---

[5] Brown-Forman does not dispute that it is an employer as defined under the FMLA statute or that Gendemeh was an
FLMA-eligible employee. [R. 26-1, p. 12].

or any subsequent treatment in connection with such inpatient care." *Id.* at § 825.114. As relevant here, "continuing treatment" includes "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to that same condition . . ." 29 C.F.R. § 825.115(a).[6] "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom" and "[t]he term treatment includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.113(b), (c). "Treatment does not include routine physical examinations, eye examinations, or dental examinations." *Id.* at § 825.113(c).

On this record, no reasonable jury could conclude that Gendemeh's absence on October 9, 2019 would have been FMLA-qualifying. Gendemeh offers two potential qualifying reasons for his leave: that his pain was related to his earlier knee issues (previously approved for FMLA leave), or, alternatively, that his neck and back pain might, on their own, be qualifying. Both fail. Gendemeh's visit to the Little Clinic that day for neck and back pain, which was treated with ibuprofen and not linked in any way to his underlying knee injury until now—four years after the appointment and only through a Declaration by Gendemeh himself, and not a physician—was not inpatient care or continuing treatment for a serious health condition. Gendemeh has at no point

---

[6] "Continuing treatment" requires "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to that same condition that *also involves*" one of the following:

> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a)(1)–(2) (emphasis added). In addition to failing under the "period of incapacity" provision, Gendemeh has not submitted evidence that would indicate he received "continuing treatment" under either of the additional requirements in subsection (a)(1) or (a)(2).

alleged—much less demonstrated—that he was incapacitated by his neck and back pain or received the type of treatment contemplated by the regulations. *See* 29 C.F.R. § 825.113(a)–(c); *see also* 29 C.F.R. § 825.115. Moreover, although Gendemeh allegedly reported to Security that he was "in pain" when he called in sick, the follow-up note from the Little Clinic made no reference to back, neck, or knee pain or any treatment related thereto, and simply stated that Gendemeh was seen "for an appointment." *See* [R. 30-3 (Little Clinic Note), p. 1]. In fact, the note listed no specific reason for Gendemeh's visit nor any other meaningful information and expressly recommended he return to work the following day. *See id.*

Even in his response to Brown-Forman's summary judgment motion, Gendemeh merely offers his belief that his neck and back pain *might* have been related to another serious health condition (his knee injury).[7] *See* [R. 30, p. 5] ("Gendemeh believed at the time that his pain may be related to his knee pain."); *see also* [R. 30-2 (Declaration of Plaintiff Gendemeh), ¶ 10]. During his deposition, however, Gendemeh testified that he went to the Little Clinic only because of neck and back pain and failed to mention this alleged connection. [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 113–14]. Of course, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907–08 (6th Cir. 2006) (citation omitted).  Gendemeh makes no attempt to explain his failure to mention the alleged connection between his neck and

---

[7] Gendemeh admits in his deposition that he went to the Little Clinic because of neck and back pain. [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 113–14]. In a new Declaration submitted with his response to Brown-Forman's summary judgment motion, however, Gendemeh submits he "believed it was related to [his] knee problems," [R. 30-2 (Declaration of Plaintiff Gendemeh), ¶ 10], for the first time.

back pain and his knee injury during his October 8, 2019 meeting with HR or during his sworn deposition.

Nevertheless, and notwithstanding Gendemeh's subjective, theoretical belief, expressed for the first time in his January 20, 2023 Declaration, that his October 7, 2019 absence might have been related to his pre-existing knee injury, there is no medical evidence (or indeed any other evidence) to support that belief.[8] The record indicates Gendemeh did not pursue follow-up treatment related to his neck and back pain (or any of his pain, for that matter) or seek medical advice concerning whether it might be caused by or related to his knee injury. [R. 26-2 (Deposition of Plaintiff James Gendemeh), pp. 111–14]. Again, this is not a credibility assessment for a factfinder to weigh; there is no evidence on which a jury could reasonably rely to find that Gendemeh's October 7, 2019 absence was related in any way to his pre-existing knee injury or otherwise involved some other serious health condition. *See* 29 C.F.R. § 825.115(a).

Gendemeh also submits that his neck and back pain "was potentially itself a 'serious health condition,'" [R. 30, p. 11], but provides no support for this assertion. Again, the record indicates Gendemeh sought treatment for this pain only one time, during his October 7, 2019 visit to the Little Clinic, and it was treated with ibuprofen and a recommendation to rest for the rest of that day. This is wholly insufficient to indicate his neck and back pain were alone a serious health condition for purposes of FMLA. "In enacting the FMLA Congress did not intend to cover leave for 'short-term conditions for which treatment and recovery are very brief.'" *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). Instead, to show "continuing treatment," an employee must be incapacitated for "more than three consecutive, full calendar days." 29 C.F.R. § 825.115(a). The record objectively demonstrates that Gendemeh's October 7,

---

[8] Relatedly, and as mentioned, Gendemeh has pointed to no evidence that his absences documented through Brown-Forman's disciplinary actions were linked to his "flare ups." *See supra* p. 3 n.2.

2019 absence was not FMLA-qualifying, and there is no issue of material fact that would allow a jury to conclude otherwise.

Even if his absence had been for an FMLA-qualifying reason, Gendemeh failed to provide sufficient notice to Brown-Forman to invoke the FMLA's protection. Notice must be given "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a); *see also Wallace*, 764 F.3d at 586. "An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). The employee's burden of providing sufficient notice "is not heavy." *Wallace*, 764 F.3d at 586. "'[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred.'" *Id.* (citations omitted) (alterations in original); *see also Brenneman v MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004) ("The critical test for substantively-sufficient notice is whether the information the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job."). "[P]art of reasonable notice generally includes an indication of 'the anticipated timing and duration of the leave,'" since "even though a qualifying employee is permitted up to twelve weeks of leave in a calendar year under the statute, many injuries and illnesses will not require the full allotment of time off." *Wallace*, 764 F.3d at 586 (citing 29 C.F.R. § 825.302(c); 29 U.S.C. § 2612(a)(1)).[9]

---

[9] With respect to the timing of Gendemeh's notice, the Court observes that Gendemeh did timely report his absence to Security, as required by Brown-Forman's attendance policy, and provided a doctor's note immediately following his absence on October 7, 2019. The Court emphasizes, therefore, that the timing of Gendemeh's notice was not its fatal flaw; rather, as thoroughly explained herein, his notice failed to indicate a need for leave for a serious health condition.

The regulations outline different notice requirements depending on whether the eligible employee is seeking leave for the first time (that is, for a new reason) or for a previously qualifying reason:

> When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. When an employee seeks leave due to a FMLA-qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave.

29 C.F.R. § 825.303(b); *see also Render v. FCA US, LLC*, 53 F.4th 905, 916 (6th Cir. 2022), reh'g denied, No. 21-2851, 2022 WL 18431480 (6th Cir. Dec. 28, 2022) (acknowledging "heightened notice requirements for employees who have previously received FMLA leave" when seeking leave for the same qualifying condition).

The Sixth Circuit has characterized the determination of an employee's compliance with FMLA's notice requirement as a mixed question of law and fact:

> [S]urely there are some facts that as a matter of law are not sufficient reasonably to apprise an employer of an employee's need for leave. Although it is within the province of the jury to determine the facts of the notice given, it is for the court to determine whether those facts are sufficient reasonably to give an employer notice as required by the FMLA. Therefore, for summary judgment purposes, we should determine whether, viewing the facts in the light most favorable to [plaintiff], [plaintiff] has complied with the FMLA's notice requirements as a matter of law.

*Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003) (superseded by statute on other grounds). Here, the parties do not dispute the facts of the notice given by Gendemeh, and it is therefore left to this Court "to determine whether those facts are sufficient reasonably to give an employer notice as required by the FMLA." *Cavin*, 346 F.3d at 723.

With respect to his October 7, 2019 absence, Gendemeh states, and the Court accepts as true for purposes of this analysis, that he "called in to Security, as was the policy, and informed them he was in pain and would be going to the doctor." [R. 30, p. 7]; [R. 30-2 (Declaration of

- 18 -

Plaintiff Gendemeh), ¶ 9]. The next day, Gendemeh provided a note from the Little Clinic stating he was seen "for an appointment," and that he needed the day off but could return to work the next day. [R. 26-3 (Exhibit 14 to Plaintiff's Deposition)]. The note did not provide any specific reason for Gendemeh's visit or even mention Gendemeh's reports of "pain." *See id.*

Even under the FMLA's standard notice requirement, the information Gendemeh provided to Brown-Forman could not reasonably have alerted the company that he was seeking FMLA leave. Put differently, even assuming Gendemeh's "pain," which was later revealed to be back and neck pain, was a new condition for which he was seeking FMLA leave for the first time, meaning he was not required to "expressly assert rights under the FMLA or even mention the FMLA," the uncontroverted evidence shows Gendemeh failed to provide adequate notice of a potentially FMLA-qualifying absence on October 7, 2019 as a matter of law where he simply advised security he was in pain and going to the doctor. *See Brenneman*, 366 F.3d at 425 (finding employee's report to employer that he "wasn't doing well and . . . wouldn't be in" coupled with doctor's note six days later stating absence was due to diabetes complication failed to provide timely notice of possible FMLA-qualification); *Woods*, 409 F.3d at 993 (finding non-descript doctor's note insufficient to provide notice to employer of employee's request for FMLA leave); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998) (finding "no rational trier of fact could conclude" employee sufficiently apprised employer of request to take FMLA leave where the "only information [employee] imparted to [employer] prior to its discharge decision was a note . . . advising that she was 'was having a lot of pain in her side,' and would not be able to work that day, but would like to make it up on one of her days off; and [employee's] mother's statement to neighbors that [employee] was 'sick'"); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008–09 (7th Cir. 2001) (affirming district court's grant of summary judgment to employer where employee

with "spotty attendance record" missed work for two days and only reported to employer that she was "sick," which "did not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable").

Moreover, to the extent Gendemeh argues his October 7, 2019 absence was related to his knee injury, which he had previously taken FMLA leave for, the FMLA's heightened notice standard applied. *See Render*, 53 F.4th at 916. Again, the FMLA statute states, "When an employee seeks leave due to a FMLA-qualifying reason, *for which the employer has previously provided the employee FMLA-protected leave*, the employee *must specifically reference either the qualifying reason for leave or the need for FMLA leave*." 29 C.F.R. § 825.303(b) (emphasis added). The crux of Gendemeh's opposition to summary judgment is that his October 7, 2019 absence was FMLA-qualifying because he believed the pain he was experiencing that day was due to his previously FMLA-qualifying knee issues. However, because Gendemeh's notice to Brown-Forman made no mention of the alleged connection between his October 7, 2019 absence and his knee condition, Gendemeh not only failed to provide adequate notice under the FMLA's general notice standard, he certainly failed to do so under its heightened standard.

Gendemeh's proffered reasons for his failure to provide sufficient notice do not create a genuine issue of material fact. During the meeting in which Gendemeh was informed his employment would be terminated, Gendemeh explains, "[n]one of the individuals inquired any further about the nature of Gendemeh's doctor visit or the reason therefore," nor did they inform "him that he could be eligible for FMLA for the absence," [R. 30, p. 8], insinuating that had he just been asked, he would have expressed his belief that his pain was related to his existing knee injury. First, any duty to inquire about a possible FLMA-qualifying absence "is only triggered once the employee has provided sufficient notice of an FMLA claim." *Miles v. Nashville Elec.*

*Serv.*, 525 F. App'x 382, 386 (6th Cir. 2013); *see also Brenneman*, 366 F.3d at 422 (explaining an employer's duty of inquiry only applies when employer receives sufficient notice that eligible employee is requesting leave for an FMLA-qualifying reason). In this case, the onus was not on Brown-Forman to inquire as to whether Gendemeh's October 7, 2019 absence was FMLA-qualifying because he provided nothing (in his call to Security, the Little Clinic treatment note, or during the meeting) on which Brown-Forman could reasonably infer that the absence could be related to his pre-existing knee injury or that he was suffering from an entirely new, serious health condition that would qualify him for FMLA leave.

Again, although Gendemeh allegedly reported he was "in pain" to Security, the follow-up note from the Little Clinic made no reference to pain, his knee injury (or any injury), or any treatment received. *See* [R. 30-3 (Little Clinic Note), p. 1]. At the time of his termination, there was simply no information that would have put Brown-Forman on notice that Gendemeh's absence on October 7, 2019 could have been FMLA-qualifying. *See* 29 C.F.R. § 825.303(b) ("Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act."); *Phillips v. Quebecor World RAI Inc.*, 450 F.3d 308, 312 (7th Cir. 2006) (citation omitted) (finding employee's explanation that she was "sick" coupled with note indicating she was seen by healthcare provider "did not place the employer on notice of a probable basis for FMLA leave" and, therefore, did not trigger a duty on the part of the employer to inquire further, because "[r]equiring employers to determine whether leave is covered by the FMLA every time an employee was absent because of sickness would impose a substantial and largely wasted investigative burden on employers"); *see also Satterfield*, 135 F.3d at 981 ("Requiring an employer to undertake to investigate whether FMLA-leave is appropriate each time an employee [is absent for unspecified reasons] is quite inconsistent with the purposes of the

FMLA, because it is not necessary for the protection of employees who suffer from 'serious health conditions,' and would be unduly burdensome to employers, to say the least.").

Second, the notion that Gendemeh would have expressed his belief that his neck and back pain were related to his knee injury if he had only been prompted during the termination meeting is contradicted by his own deposition testimony, when he *was* so prompted. Gendemeh not only failed to mention the possible connection, he expressly denied that his visit to the Little Clinic was due to knee pain when specifically asked:

> Q What was the purpose of your visit that day?
> A Well, the -- when I went over there, I was in pain.
> Q What type of pain?
> A I was feeling pain from my leg to my back, and I told them the pain is heavy on my neck, and they -- I think they prescribed for me muscle relaxer or something like that.
> Q Did you go to the Little Clinic because of knee pain that day?
> A I went over there because of back pain. My knee was in pain, but I went over there because I was feeling pain from my back, my neck, right around my neck area.

[R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 113–14]. Assuming Gendemeh would have given the same answer during the termination meeting as he did under oath during his deposition, it would not have made a difference if a Brown-Forman representative had inquired about whether the October 7, 2019 absence was FMLA-qualifying. For these reasons, the Court finds that Gendemeh did not provide sufficient notice of an intent to take FMLA leave with respect to his October 7, 2019 absence, and Brown-Forman had no duty to further inquire about the absence in light of the sparse information Gendemeh provided.

The Court turns next to Brown-Forman's alleged failure to properly inform Gendemeh of his FMLA rights. In his response to Brown-Forman's summary judgment motion, Gendemeh elaborates on the factual basis for his FMLA interference claim for the first time, arguing "Brown-Forman interfered with his FMLA rights by not properly informing Gendemeh that he was eligible

for FMLA leave and for not providing FMLA leave for his absence of October 7, 2019." [R. 30, p. 2]. Moreover, Gendemeh notes he "did not submit any medical information . . . for his October 7, 2019 absence because he was told that he was out of FMLA eligibility, which was not true." [R. 30-2, ¶ 13]; [R. 26-2 (Deposition of Plaintiff James Gendemeh), p. 115]. The Court disagrees with Gendemeh for three reasons. First, no evidence exists to show Brown-Forman misled Gendemeh about his FMLA eligibility in or around October of 2019. Second, Brown-Forman's letters properly informed Gendemeh of his rights under the FMLA. Third, Gendemeh admits he knew the HR Department was available to answer any questions or resolve any confusion he had about his rights under the FMLA or the process of applying for it.

First considering Gendemeh's argument that Brown-Forman misled him or failed to properly inform him of his FMLA eligibility, the Court finds that claim is contradicted by the evidence of record. Gendemeh acknowledges, "[t]here is no dispute that [he] had FMLA leave available to him as of July 27, 2019," but argues Brown-Forman unlawfully interfered with his ability to pursue such leave when an HR officer, Karen Greenlee, incorrectly informed him he was out of FMLA eligibility. [R. 30, pp. 11; p. 8, ¶ 13]. During his deposition, however, Gendemeh could not recall when he was told his FMLA eligibility had run out:

> Q When did you try to apply for FMLA leave?
> A I came to Karen and they said you're out of it. You don't have no more.
> Q When did you go to Karen Greenlee and ask her?
> A I don't remember the exact time.
> Q You testified earlier that you went and you talked to Ms. Greenlee before your surgery in September of 2018.
> A Yeah.
> Q Is that the time that you're talking about?
> A No. This is –
> . . .
> A A different time.
> Q Okay. When was that?
> A I can't remember the exact time.

Q Do you know whether it was in January of 2019, the beginning, the middle, or October of 2019?

A I think it was around -- I cannot remember exactly, to be honest, because it was in general I told that -- I don't know if they going to -- I got FLMA left, but it was, like, you don't have no more left.

Q What was your understanding of when your FMLA leave had expired?

A Well, to be honest, I didn't know it expired until they told me it was expired. And I was in so much pain that I think they would give me a time off until my knee can be healed totally, because it was a full knee replacement. And my job, it was hard on my knee. It was like I was struggling -- very, very slow and struggling because I was on my foot rolling barrels, rolling cart, and I would be in crucial pain every day.

Q And we will talk more about that in just a second. I was trying to establish when you understood, when you learned that you were out of FMLA time.

A I think it's – it's a time that -- I don't remember exactly. I know that they deny me. I applied for more time and they denied me, but I don't remember exact time. It's been so long, I don't remember, to be honest.

. . .

Q We are back on the record, Mr. Gendemeh.

A Yes, yes.

Q We were talking about Page 2 of 14, Defendant's Exhibit 11 before our break.

A Yeah.

Q And I had asked you about when you became aware that you were out of FMLA time.

A Yes.

Q And I don't, as I sit here right now, recall what the answer was. Do you remember when you learned?

A I did not remember when I learned. All I know that I was -- they told me that you're out of time. You're out of your FLMA. You know what I'm saying? And –

Q Do you remember when that conversation was?

A I don't remember, but I know that I had it with Karen.

[R. 26-2, (Excerpts from Deposition of Plaintiff Gendemeh), pp. 115, 67, 86–89]. Even accepting Gendemeh's claim that Karen Greenlee verbally informed him at some point in time (which Gendemeh could not even roughly estimate) that he was out of FMLA eligibility, this does not, without more, demonstrate FMLA interference. Between October 29, 2018 and July 27, 2019, Gendemeh *was* out of FMLA eligibility.

By Gendemeh's own account, his alleged conversation with Greenlee could have occurred at any point between September of 2018 and October of 2019. *See id.* Brown-Forman, on the other

hand, has submitted evidence showing that Gendemeh was informed in writing that as of October 29, 2018, he had exhausted his available FMLA leave for that period but that he would begin to accrue additional FMLA leave on the anniversary of the first date he took leave (July 27, 2019). [R. 26-4, Ex. C (October 29, 2018 Letter to Gendemeh)]; [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), p. 100]. The October 29, 2018 letter stated as follows:

> Our records indicate that as of 10/29/2018, you have exhausted your job protected leave under the Family and Medical Leave Act (FMLA) and/or state leave law. . . . [Y]ou will begin to gain back your entitlement of FMLA on a rolling basis starting on the anniversary of the first date that you took leave for any leave reason during the last rolling 12 month period. For example, if your first leave in the rolling 12 month period started on 3/1, next year on 3/1 you will begin to regain your entitlement in the same way you used it.

[R. 26-4, Ex. C (October 29, 2018 Letter to Gendemeh), p. 1]. In addition to this letter, Gendemeh received a second letter dated July 10, 2019 that outlined the dates he used FMLA leave. [R. 26-3 (Exhibit 12 to Gendemeh's Deposition), pp. 42–45]. This letter reminded Gendemeh that he began using FMLA leave for his knee injury on July 26, 2018, and that he continued to take leave through October 29, 2018, at which time he began to receive short-term disability benefits. *Id.* Further, Gendemeh acknowledges that Brown-Forman provided orientation and annual follow-up training on the FMLA and short-term disability leave. *See* [R. 26-3 (Exhibits 5, 6, 7 to Gendemeh's Deposition), pp. 1–14, 15, 16–17]; [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 47–53]. "The FMLA does not require employers to foresee that an employee would not have read the many notices that it had sent regarding the FMLA's coverage." *Walton v. Ford Motor Co.*, 424 F.3d 481, 487 (6th Cir. 2005) (cleaned up). These letters conclusively establish that

Gendemeh was properly informed of his FMLA eligibility and cut against his claim that, at some point that he cannot recall, Greenlee verbally informed him that he was out of FMLA eligibility.[10]

Importantly, this is not simply a credibility assessment on which a reasonable jury could choose to believe Gendemeh's version of events, a circumstance which would preclude summary judgment. When prompted during his deposition, Gendemeh could offer no facts on which a jury could infer that he was told sometime after July 27, 2019 that he did not have FMLA leave available. Indeed, he could recall no details or even estimate the timeframe of his alleged conversation with Greenlee. Again, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. To the contrary, the evidence clearly demonstrates that Gendemeh was accurately informed of his FMLA eligibility by two separate letters on October 29, 2018 and July 10, 2019. Gendemeh acknowledges that he "remembered that if he needed something, he should go to Human Resources." [R. 30, p. 3]. Gendemeh also acknowledges he knew the HR Department was available to answer any questions or resolve any confusion he had about his rights under the FMLA or the process of applying for it.

For all these reasons, the Court will grant summary judgment to Brown-Forman on Gendemeh's FMLA interference claim.

### ii.    FMLA Retaliation (Count II)

When considering Gendemeh's FMLA retaliation claim, which is not premised on direct evidence, the Court must apply the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (superseded by statute on other grounds). *See Marshall v. The*

---

[10] Even if Gendemeh did raise a genuine issue of fact on this issue, as further explained below, the pain he was experiencing in October 2019 was not FMLA-qualifying, and Brown-Forman could have rightfully denied a request had he made one.

*Rawlings Co. LLC*, 854 F.3d 368, 379 (6th Cir. 2017) ("The *McDonnell Douglas* burden-shifting framework applies to claims of FMLA retaliation based on indirect evidence."). Under that framework, "a plaintiff has the burden to make a prima facie case of discrimination; if the plaintiff can make a prima facie case, the defendant has the burden to articulate a nondiscriminatory reason for the adverse employment action; if the defendant can provide a nondiscriminatory reason, the plaintiff has the burden to show that the reason was pretext." *Id.*; *see also Edgar*, 443 F.3d at 508 (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313–16 (6th Cir. 2001)).

To make a prima facie showing of retaliation, Gendemeh must demonstrate that (1) he availed himself of a protected right under the FMLA by notifying Brown-Forman of his intent to take leave, (2) he suffered an adverse employment action, and (3) there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action. *Edgar*, 443 F.3d at 508 (citations omitted). As mentioned, the burden then shifts to Brown-Forman to provide legitimate, non-discriminatory reasons for its actions. *Id.*; *see also Marshall*, 854 F.3d at 379. To overcome a proffered, non-retaliatory reason, Gendemeh must point to competent evidence from which a reasonable jury could conclude that the stated reason is pretextual. *See Edgar*, 443 F.3d at 508; *Marshall*, 854 F.3d at 379. To do so, Gendemeh can show either "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (citation omitted).

In other words, Gendemeh "must show that the employer's stated reason for terminating [him] was pretextual and that the true reason for [his] dismissal was [his] medical leave." *Killian*, 454 F.3d at 556 (citing *Arban*, 345 F.3d at 404). Thus, the retaliation theory differs from the interference theory because, under the retaliation theory, "the employer's motive is an integral part

of the analysis." *Edgar*, 443 F.3d at 508 (citation omitted). As the Sixth Circuit has explained, "[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Id.* (citing *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 885 (7th Cir. 2005)).

Gendemeh's claim fails for a number of reasons, first, because he cannot make a prima facie showing of retaliation. Gendemeh suggests Brown-Forman retaliated against him for his alleged attempt to take FMLA leave on October 7, 2019 and for the FMLA leave he was approved for and took in 2018. [R. 30, p. 13]. For the same reasons Gendemeh's FMLA interference claim fails, his retaliation claim must fail with respect to the October 7, 2019 absence. Gendemeh cannot make a prima facie showing of retaliation by Brown-Forman based on his October 7, 2019 absence because, for all the reasons discussed above, he failed to properly notify Brown-Forman of his intent to take FMLA leave and because the October 7, 2019 absence was not FMLA-qualifying. *See Chase v. United States Postal Serv.*, 149 F. Supp. 3d 195, 211 (D. Mass.), aff'd, 843 F.3d 553 (1st Cir. 2016) (citing *Brenneman*, 366 F.3d at 421) (explaining an employer does not violate the FMLA under a retaliation theory "when the employer would reasonably have believed that the FMLA was not meaningfully invoked" because "there is no actual intent to discriminate against the employee for exercising his rights, because the employer neither knew nor should have known that the rights were being exercised to any effect").

Gendemeh also fails to make a prima facie showing of retaliation with respect to his earlier use of FMLA leave, though he argues "a causal connection exists between Gendemeh's earlier use of FMLA and his termination as well." [R. 30, p. 14]. Gendemeh explains that "though a year passed between his use of FMLA in 2018 and his termination in October 2019, Defendant knew that Gendemeh's knee troubles continued upon his return and knew he would be eligible for FMLA

use again effective July 27, 2019." *Id.* Notably, Gendemeh cites no evidence to support his assertion that Brown-Forman knew his knee problems persisted. *See supra* p. 3 n.2; p. 16 n.8. He claims Brown-Forman "jumped at the opportunity" to terminate his employment "instead of offering FMLA leave to Gendemeh for his absence on October 7, much less exploring with him the reason for said absence." *Id.* According to Gendemeh, "[t]hese actions suggest a causal connection between his previous use of FMLA and his termination sufficient to survive on summary judgment." *Id.* Once again, Gendemeh relies on the October 7, 2019 absence as a basis for his discrimination claim, and he makes no real argument for how his previous use of FMLA leave in 2018 was causally connected to his termination more than a year later. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"). Gendemeh's failure to adequately develop his position that his FMLA use in 2018 was causally connected to his termination makes it difficult for the Court to even consider.

Even considering this undeveloped argument, it fails on the merits. Gendemeh even appears to acknowledge that the lengthy period of time between his last use of FMLA and his termination cuts against his retaliation claim. Gendemeh acknowledges "a year passed between his use of FMLA in 2018 and his termination in October 2019." [R. 30, p. 14]. With respect to temporal proximity, just as the Sixth Circuit has noted a short period between protected activity and an adverse employment action can sufficiently demonstrate a causal connection, it has likewise recognized "cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Nguyen v. City of Cleveland*,

229 F.3d 559, 566–67 (6th Cir. 2000). Where, as here, more than a year passed between Gendemeh's FMLA use and his termination, Gendemeh cannot rely on temporal proximity alone to show a causal connection between his FMLA use in 2018 and his termination where no other evidence exists to link that protected activity with the termination. *See, e.g.*, *Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 WL 4234072, at \*7 (6th Cir. Sept. 14, 2022) (affirming district court's grant of summary judgment to employer on Title VII discrimination claim where employee began complaining to human resources two years prior to termination and most recent complaint occurred five months prior to termination, and where employee otherwise failed to present any other evidence of retaliatory conduct); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) ("Absent additional evidence, this loose temporal proximity" of "disciplinary actions occur[ing] two to five months after Hafford filed charges" is "insufficient to create a triable issue."); *Greer v. Cummins, Inc.*, No. 2:19-CV-02525-MSN-TMP, 2022 WL 2392506, at \*13 (W.D. Tenn. July 1, 2022) (finding two years between EEOC charge and termination "forecloses Plaintiff's temporal proximity argument"); *see also Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 454 (6th Cir. 2017) (citation omitted) (noting, in context of KWCA retaliation, that "temporal proximity between a worker's protected activity and an adverse employment action is generally insufficient to sustain a retaliation claim where . . . plaintiff does not point to any other facts or circumstances which would support an inference that the employer retaliated against the plaintiff"). Gendemeh has failed to make a prima facie showing of retaliation with respect to his 2018 FMLA use.

Even if Gendemeh could make out a prima facie case, Brown-Forman had legitimate, non-retaliatory reasons for terminating Gendemeh that he cannot show were pretextual. Brown-Forman points to Gendemeh's long, abysmal attendance history and violations of the company's no-fault attendance policy (problems that both pre- and post-dated his knee surgery), which resulted in

"eighteen (18) independent disciplinary actions," as its reason for terminating his employment. [R. 26-1, pp. 23–25]. Seventeen of the disciplinary actions involved attendance-related point accumulations. Gendemeh fails to acknowledge his chronic absenteeism and, instead, argues "the reason for firing Gendemeh – that he violated the attendance policy – is intimately intertwined with the FMLA leave itself and is a consequence of Defendant failing to meet its responsibilities under the FMLA." [R. 30, p. 15]. However, Gendemeh's position is misguided. The Sixth Circuit has held that "when [] absences and cause for discharge relate directly to the FMLA leave *and* the company's failure to give notice [of the consequences of failing to provide certain documentation needed for FMLA leave]," the company's "purported legitimate reason" for discharge is "intimately intertwined with the FMLA leave" and "there is no legitimate and independent reason for" the employee's termination. *Wallace v. FedEx Corp.*, 764 F.3d 571, 590 (6th Cir. 2014) (emphasis added). In *Wallace*, where the employee *did* provide adequate notice of an FMLA-qualifying condition under the regulations, the Sixth Circuit explained that the plaintiff's "failure to report for work—and her subsequent termination—is a direct result of failing to *perfect* her FMLA leave, which is a consequence of FedEx failing to meet its responsibilities under § 825.305." *Id.* (emphasis added). First, here, as the Court explained with respect to Gendemeh's FMLA interference claim, Brown-Forman met its responsibilities under the FMLA and properly informed Gendemeh of his rights. Second, as the Court has also explained, Gendemeh did not merely fail to perfect an otherwise legitimate request for FMLA leave; his October 7, 2019 absence would not have been FMLA-qualifying even if he had given Brown-Forman proper notice of his intent to take leave. *Wallace* is entirely inapplicable here.

Gendemeh also attempts to show pretext by alleging Brown-Forman "attempted to terminate Gendemeh for his absence on September 9, 2019 despite having been directed [by his

HR manager with Brown-Forman] to go to the hospital to attend to his wife" and, "[w]hen that did not work, . . . jumped at the opportunity [to terminate him] a month later [] instead of offering FMLA leave to Gendemeh for his absence" on October 7, 2019. [R. 30, p. 14]. There is, however, no evidence in the record that Brown-Forman "attempted to terminate Gendemeh" after he left work on September 9, 2019 to be with his wife in the hospital. Rather, it appears a miscommunication occurred (which resulted in a disciplinary write-up) but was quickly corrected. Gendemeh's HR Manager advised him that he could leave work to be with his wife in the hospital and that the absence would not "count against [him]." [R. 1 (Complaint), ¶ 21]. The next day, however, Gendemeh was incorrectly advised by a different HR officer that he had "pointed out," and he was written up for violating the attendance policy. *Id.* at ¶ 22; [R. 26-2 (Deposition of Plaintiff James Gendemeh), pp. 71–72]. But after Gendemeh disputed the write-up, his HR Manager withdrew the seventh point, upon realizing Gendemeh has been given permission to leave work to attend to his wife. [R. 1 (Complaint), ¶¶ 22]. Gendemeh suffered no additional adverse action with respect to this absence, and the HR Department's error (which was fixed shortly thereafter) does not demonstrate pretext for purposes of Gendemeh's FMLA retaliation claim. Gendemeh has pointed to no evidence that shows Brown-Forman's reasons for firing him were untrue, that the reasons did not actually motivate his termination, or that they were insufficient to motivate discharge.

Lastly, the Court agrees with Brown-Forman that its previous efforts to ensure Gendemeh could receive short-term disability benefits when he previously used all his available FMLA leave, *see supra*, Section I; [R. 26-2 (Deposition of Plaintiff James Gendemeh), pp. 67–68, 99, 105; [R. 26-3 (Exhibits 12, 13 to Gendemeh's Deposition), pp 42–45, 46–50], the company's previous willingness to allow Gendemeh time off work without penalty to visit his sister suffering from

cancer, [R. 26-2 (Deposition of Plaintiff James Gendemeh), pp. 49–50, 59–60]; [R. 26-3 (Exhibit 8 to Gendemeh's Deposition), pp. 18–19], and its willingness to execute a Last Chance Agreement with Gendemeh after numerous disciplinary infractions cut against Gendemeh's attempted showing of pretext. Simply put, the evidence plainly shows that Gendemeh achieved seven points in the twelve-month period prior to his termination, and Brown-Forman terminated him for violating its no-fault attendance policy.

For all these reasons, the Court will grant summary judgment to Brown-Forman on Gendemeh's FMLA retaliation claim.

**B.  National Origin Discrimination Claims Under the KCRA (Count IV)**

In addition to his FMLA claims, Gendemeh also alleges he was discharged due to his national origin in violation of the Kentucky Civil Rights Act. The KCRA makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . national origin[.]" KRS § 344.040(1)(a). "Because the KCRA is modeled on Title VII of the Civil Rights Act of 1964, [] federal decisions interpreting the federal act are 'most persuasive, if not controlling, in interpreting the Kentucky statute.'" *Stacy v. Shoney's, Inc.*, 142 F.3d 436, at *2 (6th Cir. 1998) (table decision) (quoting *White v. Rainbo Baking Co.*, 765 S.W.2d 26, 28 (Ky. Ct. App. 1988)); *see also Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 510 (6th Cir. 2022) (noting relevant portions of KCRA and Title VII are "virtually identical"). "A plaintiff may establish a violation of the KCRA through direct or circumstantial evidence." *Chavez v. Dakkota Integrated Sys., LLC*, 832 F. Supp. 2d 786, 794 (W.D. Ky. 2011).

As with Gendemeh's FMLA claims, he has no direct evidence of national origin discrimination and relies solely on circumstantial evidence. As such, his claims are analyzed under

the same burden shifting standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Blount*, 55 F.4th at 510. "To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination[.]" *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019); *see also Blount*, 55 F.4th at 510 (6th Cir. 2022). Once he does so, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Redlin*, 921 F.3d at 607 (internal citation and quotation marks omitted). "Should the defendant do so, the plaintiff then must prove . . . that the stated reasons were a pretext for discrimination." *Id.*

To establish a prima facie case of national origin discrimination using circumstantial evidence, Gendemeh must show that: (1) he was a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated, non-protected employees. *Adebisi v. Univ. of Tennessee*, 341 F. App'x 111, 112 (6th Cir. 2009) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)); *see also Blount*, 55 F.4th at 510 (6th Cir. 2022).

The parties do not dispute that Gendemeh is a member of a protected class since he is from Sierra Leone. They also do not dispute that he was qualified for his job and that he suffered an adverse employment action when he was terminated. The parties' dispute lies with the fourth element of Gendemeh's discrimination claim. With respect to that element, Gendemeh argues differential treatment—that a "similarly situated, non-protected employee," Bruce Stanton, was treated more favorably by Brown-Forman. [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 123–25, 156]; [R. 30, p. 2]. In its summary judgment motion, Brown-Forman argues Gendemeh "cannot establish the fourth element of his claim because he has identified no apt comparator." [R. 26-1, p. 22].

"To be considered similarly situated, a comparator need not be identical, but should be similarly situated 'in all relevant respects.'" *Blount*, 55 F.4th at 511 (citation omitted). "'Superficial similarities between a disciplined employee and his colleagues' are not enough to make them comparators." *Id.* at 511–12 (quoting *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) (citing *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 802 (6th Cir. 1994)). In addition, employees may be similarly situated where they "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Adebisi*, 341 F. App'x at 112 (internal citation and quotation marks omitted); *see also Blount*, 55 F.4th at 512.

Moreover, and importantly here, "[i]n order to be considered similarly situated, employees must have "engaged in acts of 'comparable seriousness.'" *Blount*, 55 F.4th at 512 (citation omitted). "The fact that two employees both received a warning or a negative performance review, for example, is not enough to make those employees similarly situated; instead, the reviews must concern similar work issues." *Id.* (citing *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 458–59 (6th Cir. 2010)). Gendemeh's proffered comparator, Bruce Stanton, is an African American employee who was terminated under Brown-Forman's no-fault attendance policy but ultimately reinstated under a Last Chance Agreement. [R. 26-2 (Excerpts from Deposition of Plaintiff Gendemeh), pp. 123–25, 156]; [R. 26-1, pp. 22–23].

Brown-Forman argues Stanton's race alone renders him an inappropriate comparator and notes, "in the Title VII context, the terms [race and national origin] overlap as a legal matter." [R.

26-1, p. 22] (quoting *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J.,

concurring); EEOC Compliance Manual, Section 15 "Race and Color Discrimination," part IV(A),

Office of Legal Counsel, Title VII/ADEA/EPA Division ("National origin and race often overlap

because persons who themselves are, or whose ancestors were, of the same national origin

frequently are of the same race.")). Indeed, "'protected characteristics' or 'protected classes'—are

not mutually exclusive. In particular, claims based on race and national origin 'may substantially

overlap or even be indistinguishable depending on the specific facts of a case.'" *Vill. of Freeport

v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016); *see also Dequan Lin v. Salazar*, 891 F. Supp. 2d 49,

55 (D.D.C. 2012) (observing that "African-American national origin is closely associated with

African-American race"). Even so, the Court cannot agree with Brown-Forman that simply

because Stanton and Gendemeh may be among the same protected racial class, that Stanton could

under no circumstances be an apt comparator to Gendemeh with respect to national origin

discrimination. *See Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (quoting *Dixit v. City of

N.Y. Dep't of Gen. Servs.*, 972 F. Supp. 730, 734 (S.D.N.Y. 1997)) ("'An assertion of racial bias

is conceptually distinct from a claim of discrimination on the basis of national origin.'").

But whether race and national origin are indistinguishable here has no bearing on the

Court's analysis. Gendemeh has failed to offer any facts to indicate he and Stanton are similarly

situated in all relevant respects, such as whether the two "dealt with the same supervisor" or were

"subject to the same standards," *Adebisi*, 341 F. App'x at 112, or whether they shared similar "job

title[s], responsibilities, experience, and work record[s]," *Leadbetter*, 385 F.3d at 691. In fact, he

offers no facts upon which to compare the two to determine if they were similarly situated in all

relevant respects. Indeed, the sum total of Gendemeh's disparate treatment argument is as follows:

"Plaintiff has identified Bruce Stanton [who is American-born] as a similarly-situated individual

- 36 -

who accrued attendance points like Gendemeh [who is African-born], was terminated, but unlike Gendemeh, was allowed to return to work under a Last Chance Agreement." [R. 30, p. 18].

Gendemeh's undeveloped argument ignores the serious and significant differences between him and Stanton, including their work records, previous infractions, and experience. First, the Court notes that Gendemeh *was* allowed to return to work under a Last Chance Agreement. [R. 26-3 (Exhibit 10 to Gendemeh's Deposition), p. 22]. In 2018, Gendemeh returned to work after he signed a Last Chance Agreement for violations of Brown-Forman's Workplace Aggression Policy due to threatening behavior toward a co-worker. *See id.* Further, the nature of Gendemeh's Last Chance Agreements differs in seriousness. Stanton's agreement involved attendance issues, and Gendemeh's involved workplace aggression. Broadly viewing work history, Gendemeh has failed to show that the two engaged in conduct of "comparable seriousness" and were treated differently. *See Blount*, 55 F.4th at 512 (citation omitted).

Gendemeh and Stanton also differ based on employment history and attendance issues. That is, concerning Stanton, there are "differentiating or mitigating circumstances that [] distinguish [his] conduct or [Brown-Forman's] treatment of [him]." *Adebisi*, 341 F. App'x at 112; *Blount*, 55 F.4th at 512. As Brown-Forman notes, Stanton "was a thirty (30) year employee of Brown-Forman on FMLA leave who was released to return to work by his treating healthcare provider on March 2, 2020," and that, "unlike Plaintiff, [Stanton] had no prior experience with FMLA leave and the return-to-work process." [R. 26-5, Ex. D (Declaration of Karen Greenlee), ¶¶ 5, 6]. Consequently, when the Union filed a grievance on Stanton's behalf following his termination, "[g]iven his inexperience with FMLA leave over his thirty-year career, the Company resolved the grievance by allowing Mr. Stanton to return to work under a Last Chance Agreement." *Id.* at ¶ 8. Importantly, Gendemeh, who had a long history of attendance issues, had already

executed a Last Chance Agreement with Brown-Forman on June 22, 2018, for threatening a co-worker, and was issued a Final Suspension for violations of the Brown-Forman Workplace Aggression Policy. [R. 26-1, pp. 7–8]; *see also* [R. 26-3 (Exhibits 10, 11, 12 to Gendemeh's Deposition), pp. 21–23, 24–41, 42–45].[11]

Gendemeh has submitted no evidence to indicate that Stanton violated his Last Chance Agreement or received attendance-related discipline thereafter and remained employed by Brown-Forman. Conversely, Brown-Forman has submitted Notices of Disciplinary Action Resulting from Unacceptable Attendance, *see* [R. 26-3 (Exhibit 11 to Gendemeh's Deposition), pp. 25–29], documenting at least six attendance violations *after* Gendemeh signed his Last Chance Agreement with the company. *See Blount*, 55 F. 4th at 513 ("The most important distinction between [plaintiff] and all of his proposed comparators is the lack of evidence that any [other of defendant's] employee[s] remained employed after violating a last-chance agreement. . . . [Plaintiff], by contrast, was terminated when he violated his last-chance agreement related to attendance."). Gendemeh's persistent attendance policy violations before and after his Last Chance Agreement, and his prior instance of workplace aggression against another employee set him apart from Stanton and make clear that Stanton is not an apt comparator.

For these reasons, Gendemeh has failed to make a prima facie showing of discrimination. No reasonable jury could find that Gendemeh was treated differently than a similarly situated, non-protected employee based on the evidence before the Court. Gendemeh wholly fails to address the multitude of "differentiating and mitigating circumstances" of Stanton's conduct and employment history that distinguishes it from his own and distinguishes Brown-Forman's treatment of the two.

---

[11] The Notice of Disciplinary Action by which Gendemeh received his final suspension warned that "[a]ny further violations of [the] Workplace Aggression Policy, Brown-Forman Cooperage Rules & Regulations or Code of Conduct will result in termination." [R. 26-3 (Exhibit 10 to Gendemeh's Deposition), p. 21].

Consequently, the Court need not continue through the *McDonnell Douglas* analysis. Even so, the Court notes that Brown-Forman's explanation for Gendemeh's termination is well-grounded in fact and, "at the pretext stage," Gendemeh must put forth evidence of pretext under one of the three ways recognized by the Sixth Circuit. *See Blount*, 55 F.4th at 510. As with his FMLA retaliation claim, Gendemeh offers no such evidence. Rather, he simply re-argues the same issues he did in an attempt to establish his prima facie discrimination case. For the same reasons the Court finds Gendemeh failed toshow pretext with respect to his FMLA retaliation claim, it finds he has failed to do so with respect to his national origin discrimination claim.

For all these reasons, Gendemeh's national origin discrimination claim must fail.

## IV.     CONCLUSION

For these reasons, the Court will grant summary judgment to Brown-Forman as to all claims in this action. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1.    Defendant Brown-Forman Corporation's Motion for Summary Judgment [**R. 26**] is **GRANTED**.

2.    A separate Judgment will be entered consistent with this Order.

This the 28th day of September, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Cc: Counsel of Record